IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20496

_____

MITZIE L. CRADDOCK,

Plaintiff-Appellant,

v.

HARRIS COUNTY, TEXAS and CRAIG HUGHES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-94-3709)
_____

March 28, 1997

Before REAVLEY, KING and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Mitzie L. Craddock appeals the district court's order granting summary judgment to defendants Deputy Constable Craig A. Hughes and Harris County on her 42 U.S.C. § 1983 claims and the court's granting of summary judgment to Hughes on Mrs. Craddock's various state law claims. Finding no error, we affirm.

**I. Background**

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

As this is a review of a summary judgment, we will state the relevant facts in the light most favorable to Mrs. Craddock, the nonmovant.

On October 19, 1991, Harris County Deputy Constable Hughes responded to a complaint about a loud party at the Craddocks' home in a residential area of Kingwood. Hughes observed a number of youths in and around the Craddocks' residence[1] and several cars parked along the street. Mrs. Craddock and her husband were preparing to go to bed when one of the youths informed them that a policeman was outside preparing to tow cars. Mrs. Craddock went outside to investigate. She saw Hughes standing by his patrol car apparently ticketing one of the youths. Mrs. Craddock asked Hughes why he was planning to tow the cars. After some discussion, Hughes asked Mrs. Craddock for identification. She replied that she did not have any. Hughes then told Mrs. Craddock to place her hands on his car. She did so, but Hughes apparently did not like the way she placed them and he physically repositioned her hands. Mrs. Craddock, believing Hughes was about to frisk her, told him that he had no right to do so and that she would not allow it. At that point, Mrs. Craddock's teenage son, Patrick, confronted Hughes about Hughes's treatment of Mrs. Craddock. After several verbal exchanges, Hughes chased Patrick up the driveway. During the chase Mrs. Craddock went back into her house.

---

[1]Hughes reported that there were approximately 200 youths, while witnesses for the Craddocks provide varying numbers as low as 20.

A short time later, other deputy constables, including Hughes's supervisor, arrived at the Craddocks' residence. The supervisor told Mr. Craddock that he wanted to get Mrs. Craddock's and Patrick's versions of the evening's events. Mr. Craddock did not want his wife and son to leave the house to speak with the constables. The supervisor assured the Craddocks that he only wanted to talk and did not plan to arrest anyone. The Craddocks then relayed their versions of what happened. Hughes promised to get a warrant and to return to arrest Mrs. Craddock. After conducting a search of the exterior of the Craddocks' residence, the constables left.

Hughes and two other deputy constables returned to the Craddocks' residence on October 21 near midnight. They served a warrant for Mrs. Craddock's arrest for the offense of evading arrest. She was taken to the Harris County jail and booked at approximately 2:00 a.m. Mrs. Craddock was released on bond at 11:30 a.m.

Mrs. Craddock was tried for evading arrest in a Harris County Criminal Court-at-Law on February 19, 1992. The trial judge granted an instructed verdict of not guilty at the close of evidence.

Mrs. Craddock filed a state court civil action against Hughes and Harris County on July 23, 1993. She alleged state law claims for false arrest, invasion of privacy, negligence, conspiracy to falsely obtain an arrest warrant, and malicious prosecution. On October 14, 1994, the court granted summary

3

judgment in favor of Harris County on all pending claims, but allowed the claims asserted against Hughes to continue. On October 17, 1994, Mrs. Craddock amended her petition to allege federal civil rights claims under 42 U.S.C. § 1983 against Harris County and Hughes.[2] Relying on this newly-presented federal question, defendants removed this lawsuit to federal district court on October 31, 1994.

The federal district court granted summary judgment in favor of both defendants on April 23, 1996. The summary judgment in favor of Harris County on the § 1983 claim against the County was based on Mrs. Craddock's failure to allege facts or submit proof indicating that her alleged deprivation of constitutionally protected rights was a result of a Harris County policy or custom. Summary judgment in favor of Hughes was granted based on qualified immunity and disposed of all pending claims, which consisted of the § 1983 claims as well as the various state law claims.

Mrs. Craddock timely filed a notice of appeal. On appeal, Mrs. Craddock argues that several fact issues are present, precluding the granting of summary judgment. Mrs. Craddock alleges that the October 21 arrest was illegal and unconstitutional because it was based on an invalid warrant. She relies on events from the October 19 incident to attempt to

---

[2]Harris County and Hughes argue that Mrs. Craddock's § 1983 claims do not relate back to the date the original petition was filed and, therefore, are barred by the two-year statute of limitations. Due to our disposition of other issues on this appeal, we do not reach this question.

establish the illegality of the arrest warrant and as evidence of an official Harris County policy or custom that led to a constitutional deprivation.

## II. Standard of Review

This court reviews the granting of summary judgment de novo, applying the same criteria used by the district court in the first instance. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). First, the court consults the applicable law to ascertain the material factual issues. *King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). The court then reviews the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994); *FDIC v. Dawson*, 4 F.3d 1303, 1306 (5th Cir. 1993). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## III. Claims Against Hughes

### A. Section 1983 Claims

Hughes obtained an arrest warrant before arresting Mrs. Craddock. Therefore, in order to recover from Hughes under § 1983 for any damages arising from the arrest, Mrs. Craddock must make a showing that Hughes, in his arrest warrant affidavit, intentionally misrepresented material facts, stated material

5

facts in reckless disregard for the truth, or omitted material facts.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

Viewing the evidence in the light most favorable to the plaintiff, we find that no issue of material fact exists as to whether Hughes violated the *Franks v. Delaware* standard. Undoubtedly, there is substantial disagreement as to what actually happened between Mrs. Craddock and Hughes on the night of the party.  However, Mrs. Craddock's version of the events simply does not call into question whether Hughes intentionally or recklessly included or omitted false information in the affidavit.[3]

Mrs. Craddock attempts to attack Hughes's affidavit by questioning the evidentiary support for several representations contained therein.  Most notably, she disputes whether minors were drinking alcohol, whether alcohol was provided, whether Hughes was attempting to arrest her, and whether she knew Hughes

---

[3]Hughes's affidavit stated in full as follows:

> Affiant, C.A. Hughes, is a credible and reliable person who is reputably employed as a peace officer with Harris County Constable's Office.  Affiant believes and has reason to believe that Defendant, Mitzie Craddock, committed the offense of evading arrest on October 19, 1991, in Harris County, Texas.  Affiant spoke with the Defendant regarding a party at her house where people under the age of 21 were drinking alcoholic beverages. The Defendant stated that it was under her residence. Affiant learned from her son, who is 18 YOA that he was having a party.  Affiant saw that alcoholic beverages were provided.  Affiant, who was in uniform, attempted to arrest the Defendant when she turned away from him and ran into her residence evading arrest.  The Defendant knew the Affiant was a police officer and knew that Affiant was attempting to arrest her.

6

was attempting to arrest her when she fled into the house. Under the undisputed facts, there were minors at the party, there was alcohol at the party, and Hughes, even from Mrs. Craddock's point of view, was attempting to detain her when Patrick interfered with Hughes's actions and Mrs. Craddock went back into her house. We note that the offense with which Mrs. Craddock was charged actually encompassed evading arrest or evading detention. *See* TEX. PENAL CODE § 38.04 (Vernon 1994). That Hughes stated in his affidavit he was attempting to "arrest" Mrs. Craddock and also stated that Mrs. Craddock knew she was being "arrested" when she fled into her house, rather than using the word "detained", does not cause Hughes's arrest warrant affidavit to fail the *Franks v. Delaware* standard. We do not require law enforcement officers to be grammarians. *Garris v. Rowland*, 678 F.2d 1264, 1273 (5th Cir. 1982).[4]

**B. State Law Claims**

The district court found that Hughes was protected by qualified immunity from further litigation of Mrs. Craddock's state law claims. Texas allows qualified immunity as an affirmative defense by a governmental employee if three tests are met: (1) the employee was performing discretionary duties, (2)

---

[4]The district court granted summary judgment on Mrs. Craddock's § 1983 claims against Hughes based on Hughes's qualified immunity. However, we find that the summary judgment evidence raised no issue of material fact as to whether Hughes violated Mrs. Craddock's constitutional rights. Qualified immunity need not be inquired into, as no constitutional right has been violated. *Barker v. Norman*, 651 F.2d 1107, 1124 (5th Cir. 1981).

7

the employee was acting in good faith, and (3) the employee was acting within the scope of his authority. *Wyse v. Department of Pub. Safety*, 733 S.W.2d 224, 227 (Tex. App.--Waco 1986, writ ref'd).

The only element that seems to be in dispute in this case is whether Hughes was acting in good faith. The Texas standard for determining whether a law enforcement officer acted in good faith, which is derived from the federal standard for § 1983 actions, measures whether a reasonably prudent law enforcement officer could have believed that the defendant officer's acts were justified under the same or similar circumstances. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994)(establishing the good faith standard for pursuit cases).

Mrs. Craddock has not raised a fact issue as to whether Hughes's actions on the night of the party and his actions in executing the warrant meet the Texas standard for qualified immunity. The district court correctly concluded that Hughes was entitled to summary judgment on the basis of qualified immunity on all of Mrs. Craddock's state law claims.

### IV. Harris County

In order to establish municipal liability under § 1983, a plaintiff must demonstrate that a municipal policy or custom caused a constitutional deprivation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978); *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992). Although Mrs. Craddock has attempted to raise several "customs or

policies" of Harris County, we find that she has not raised a material fact issue as to whether any Harris County custom or policy actually *caused* any injuries she may have suffered.

AFFIRMED.